```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA

                       AT CHARLESTON
```

**ROUNDTREE GOODMAN,**

      **Plaintiff,**

v.                                    Civil Action No. 2:12-0439

**ROBIN RAMEY, Correctional Officer,**
**SHERRY COOK, Unit Manager,**
**VALORIE ADKINS, Case Manager,**
**DAVID BALLARD, Warden,**
**BRIAN GREENWOOD, Disciplinary Hearing Officer,**
**SHERRILL LYNN SNYDER, Mental Health Director,**
**JASON COLLINS, Associate Warden of Programs,**
**MARK CRAWFORD, Librarian,**
**CHERYL CHANDLER, Warden's Executive Assistance,**
**all at Mount Olive Correctional Complex,**
**JAMES RUBENSTEIN, Commissioner of Division of Corrections,**
**and JOHN AND JANE DOE, Unknown Defendants,**
**each sued in their individual capacities, unless**
**the court deems it proper and just to modify,**

      **Defendants.**


## MEMORANDUM OPINION AND ORDER


This action was previously referred to Mary E. Stanley, United States Magistrate Judge, who has submitted her Proposed Findings and Recommendation ("PF&R") pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B).

The court has reviewed the PF&R entered by the magistrate judge on May 17, 2012. The magistrate judge recommends that the court dismiss the complaint pursuant to 28

U.S.C.§ 1915A and Supreme Court precedent, that the Application to Proceed Without Prepayment of Fees and Costs be denied, and that the motion for temporary restraining order and preliminary injunction be denied as well.

On May 25, 2012, Mr. Goodman sought an extension of 60 days within which to object to the PF&R.  On June 4, 2012, the court received a 25-page objection, with attachments, to the PF&R ("first set of objections").  On June 6, 2012, the court granted the requested extension, permitting Goodman until July 25, 2012, to file objections ("second set of objections").  On July 27, 2012, the 42-page objection, with attachments, was received.

Mr. Goodman's claims result from several alleged injuries, which consist of (1) a deprivation of his First Amendment right to exercise his faith, arising out of Mr. Goodman being written up for receiving a prohibited financial gift from a party outside the facility, (2) a similar deprivation arising out of Mr. Goodman not being permitted to call the outside party during the disciplinary hearing concerning the gift, (3) a deprivation of his Fourteenth Amendment procedural due process rights, and his right to be free from retaliation under the First Amendment, arising out of certain correctional officials reducing a portion of his legal

and other records, (4) a deprivation of his Fourteenth Amendment procedural due process rights arising out of one or more correctional officers serving on his classification and administrative segregation committee despite their alleged personal animus against him, (5) the making of certain verbal threats against him, without reference to any particular constitutional right allegedly being violated, and (6) his termination from a long-held prison library job.

The magistrate judge recommends that Mr. Goodman's claims be dismissed. A familiarity with the magistrate judge's well-reasoned recommendation is assumed.

Respecting the statute of limitations, the magistrate judge suggests that claims arising prior to February 21, 2010, are barred by the applicable two-year limitations period. Mr. Goodman asserts that he placed his complaint in the prison mail service on February 17, 2012, which, in light of the two-year limitation period, should cover events occurring on and after February 17, 2010. The "mailbox rule" applies to complaints filed pursuant to 42 U.S.C. § 1983. See, e.g., Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (citing cases and noting that, "A majority of circuit courts has been asked to apply the Houston mailbox rule to § 1983 suits filed by pro se prisoners, and all of those circuits have done so.").

Accordingly, any claims arising out of conduct that occurred prior to February 17, 2010, are barred by the applicable limitations period. This observation, however, matters little inasmuch as (1) Mr. Goodman asserts that he "is not complaining of any issue prior to February 18, 2010," (First Set of Objecs. at 3), and (2) the events for which he seeks a recovery occurred on or after February 25, 2010.

Next, Mr. Goodman parses Policy Directive 1.23 in an attempt to demonstrate that it was misapplied respecting his receipt of the financial gift from the outside giver. The First Amendment religion aspect of the claim arises from the fact that the outside giver made the gift as a result of Mr. Goodman being a "Christian brother" to the giver's son.

Policy Directive 1.23, which governs the matter of trading and selling with others, provides materially as follows:

> No inmate shall . . . receive, . . . gift or receipt any goods or services of any nature with . . . any . . . . persons . . . including visitors, other than through the system established by the Warden/Administrator for that purpose.

Mr. Goodman's interpretive attempts to extricate himself from the reach of this applicable rule are unavailing. For example, he stresses that the alleged gift was unsolicited. That is immaterial under Policy Directive 1.23. It would be expected that inmates would caution outside parties about sending such

4

unsolicited items without first seeking correctional staff approval.

In any event, the First Amendment challenge is doomed for more obvious reasons. There is no indication that the Policy Directive was applied other than in a neutral manner, without any prohibited reliance upon the ostensible religious purpose underlying it. For these reasons, and the reasonable and security-based interpretation given to Policy Directive 1.23, the objection is not meritorious.[1]

---

[1] Mr. Goodman also challenges the fairness of his disciplinary hearing inasmuch as the hearing officer did not call the gift giver for an explanation. Assuming he was able to demonstrate the required atypical and significant hardship necessary to state a due process claim under these circumstances, as more fully discussed infra, he cites no authority for the proposition that correctional officials must contact witnesses on his behalf who reside outside the facility. Indeed, our court of appeals has observed as follows: "[H]earing officers. . . may decide that legitimate penological interests justify the denial of an individual inmate's witness request, and their decisions are not to be lightly second-guessed by courts far removed from the demands of prison administration." Brown v. Braxton, 373 F.3d 501, 505 (4th Cir. 2004). In any event, the process given was adequate even if considered under the three-factor test found in Mathews v. Eldridge, 424 U.S. 319, 335 (1976); see also Lovelace v. Lee, 472 F.3d 174, 202 (4th Cir. 2006).
　　Mr. Goodman also appears to assert that another regulation at the prison prohibits inmates from receiving outside funds in more than $100 increments, with checks and money orders exceeding that amount being returned to sender without the inmate being disciplined. He asserts that the unsolicited gift should have thus been returned to sender without disciplinary action. Mr. Goodman, however, ignores the fact that he received funds not only in a prohibited amount, but from a prohibited source. The regulation he cites does not control the matter.

Mr. Goodman next asserts that the magistrate judge erred in recommending dismissal of his claims related to the destruction of "legal document's [sic] and personal records that . . . [he] had accumulated over a period of . . . twenty years." (First Set of Objecs. at 8). Analyzed under the First Amendment, it is the case that the citizenry enjoys, under certain circumstances, a right of access to court documents, as Mr. Goodman notes.

No one, however, denied Mr. Goodman access to court and other records. Instead, the reduced documents appear to have been taken from him based on their volume and a concern that they might be used for purposes of harassing correctional staff or intimidation. It is worth noting at the outset that the decision requiring Mr. Goodman to reduce his records is outside the applicable limitations period. (See PF&R at 7).

While the actual reduction of those records by correctional officials, following their discovery of contraband therein in the form of personal records concerning prison employees, falls within the limitations period, Mr. Goodman offers no authority for the proposition that the Constitution requires the unlimited storage and use of such materials.

6

Indeed, it is well settled that an inmate's constitutional rights can be limited to achieve legitimate penological objectives. A correctional institution practice that infringes on an inmate's constitutional rights is valid if it is reasonably related to a legitimate objective. <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987)(stating factoring test for assessing prison regulations). The reduction demand, and its implementation, do not offend the First Amendment. The objection is not meritorious.[2]

The balance of Mr. Goodman's claims allege violations of the Fourteenth Amendment right to procedural due process. As the magistrate judge notes, however, inmates in correctional facilities do not enjoy the same procedural due process protections as ordinary citizens. It is instead incumbent upon Mr. Goodman to demonstrate that his administrative segregation,

---

[2] To the extent that Mr. Goodman lodges a separate First Amendment claim asserting impairment of his right of access to the courts, it too fails. He appears to claim at certain points that the reduction has resulted in his loss of certain evidence and his inability to demonstrate exhaustion in other cases he intended to file inasmuch as some grievance records were among the documents discarded. First, Mr. Goodman offers little in the way of specifics about the documents lost, the reasons he is unable to recreate them, and why their loss eviscerates his litigation prospects.
    Second, and more importantly, no one has closed the courthouse doors to Mr. Goodman. For example, on the matter of exhaustion, the court is confident that correctional officials would supply Mr. Goodman copies of prior grievances for purposes of satisfying any exhaustion requirement imposed upon him for subsequent litigation.

and the other procedural due process deprivations he alleges, resulted in an atypical and significant hardship to him.

For example, Mr. Goodman alleges a Fourteenth Amendment procedural due process deprivation arising out of one or more correctional officers serving on his classification and administrative segregation committee, despite their alleged personal animus against him. Mr. Goodman's administrative segregation here, however, does not give rise to a protectable liberty interest. He has not shown that the alleged deprivation visited, as required by Sandin v. Conner, 515 U.S. 472 (1995), an atypical and significant hardship upon him in relation to the ordinary incidents of prison life. Absent that showing, no procedural due process foundation arises upon which to build a claim that the decision making committee lacked impartiality. See, e.g., Wilkinson v. Austin, 545 U.S. 209, 223 (2005)("After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'"); McKune v. Lile, 536 U.S. 24, 37 (2002) ("[T]he Court in Sandin held that challenged prison conditions cannot give rise to a due process violation unless those conditions constitute 'atypical and significant

8

hardship[s] on [inmates] in relation to the ordinary incidents of prison life.'"); Kitchen v. Upshaw, 286 F.3d 179, 188 (4th Cir. 2002) ("Sandin clearly mandates that we find prisoners enjoy a protected liberty interest only when an inmate can demonstrate he suffered an 'atypical and significant hardship in relation to the ordinary incidents of prison life.'"); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997)("And, because they possessed no liberty interest in avoiding confinement in administrative segregation, the district court properly granted summary judgment in favor of prison officials on Inmates' procedural and substantive due process claims.").

It is worth noting that, assuming Mr. Goodman could make out an atypical and significant hardship, there are a myriad of other problems with his laundry list of due process claims. Two examples will suffice. First, respecting the lack of a neutral decision maker, Mr. Goodman has not directed the court to any contemporaneous objection he made to the committee's allegedly flawed composition. See, e.g., 2 Michael B. Mushlin, Rights of Prisoners § 10:45 (4th ed. 2012) ("As is true with many other due process rights, the right to an impartial hearing officer or tribunal may be waived by failing to raise the issue at a time in the process when appropriate remedial action could have been taken.").

9

Second, respecting the attempted procedural due process challenge to the reduction of his papers, the claim is covered by the Supreme Court's decisions in Parratt v. Taylor, 451 U.S. 527 (1981), Hudson v. Palmer, 468 U.S. 517 (1984), and Zinermon v. Burch, 494 U.S. 113 (1990).[3]  Our court of appeals summarized this line of precedent as follows:

> In each of those cases, the Court evaluated the viability of a § 1983 claim that state employees, disregarding established state procedures, had deprived the plaintiff of property or liberty without a prior hearing, in contravention of the procedural aspects of the Fourteenth Amendment's Due Process Clause. The Court held in Parratt and Hudson that such a deprivation cannot be challenged under § 1983 if the employees' conduct was random and unauthorized -- rendering it impracticable for the State to provide a predeprivation hearing -- so long as the State has provided for an adequate postdeprivation remedy.

Bogart v. Chapell, 396 F.3d 548, 551 (4th Cir. 2005).

Under the aforementioned line of authority, the alleged unauthorized and retaliatory reduction of documents

---

[3] For example, the decision in Hudson involves what appears to be precisely the same circumstances as those alleged by Mr. Goodman.  An inmate, Palmer, was the subject of a "shakedown" search of his locker and cell for contraband by a correctional officer, Hudson.  Palmer instituted a section 1983 procedural due process action against Hudson based upon Hudson's intentional destruction of certain  non-contraband personal property during the search.  That property included legal papers.  The majority opinion notes as follows: "We hold . . . that, even if petitioner intentionally destroyed respondent's personal property during the challenged shakedown search, the destruction did not violate the Fourteenth Amendment since the Commonwealth of Virginia has provided respondent an adequate postdeprivation remedy."  Id. at 536.

10

could not have been preceded by a predeprivation hearing.  It was, treating Mr. Goodman's allegations as true, a random and calculated act to punish him much like the circumstances in Hudson. Further, inasmuch as Mr. Goodman has not alleged the absence of an adequate post-deprivation remedy under West Virginia law for the allegedly wrongful act, his property was not taken without due process.  Indeed, as in Hudson, there is no indication that Goodman could not challenge the reduction of his records in a garden-variety tort claim in state court, similar to inmate Palmer.  See Hudson, 468 U.S. at 536 ("Both the District Court and, at least implicitly, the Court of Appeals held that several common-law remedies available to respondent would provide adequate compensation for his property loss. We have no reason to question that determination . . . .").

Having considered all of the challenges lodged by Mr. Goodman in his first and second sets of objections, the court concludes that the objections are not meritorious.  It is, accordingly, ORDERED as follows:

1.  That the PF&R be, and it hereby is, adopted by the court and incorporated herein;
2.  That this action be, and it hereby is, dismissed with prejudice and Mr. Goodman's Application to Proceed

Without Prepayment of Fees and Costs is denied; and

3. That Mr. Goodman's motion for a temporary restraining order and preliminary injunction be, and they hereby are, denied; and

4. That this action be, and it hereby is, stricken from the docket.

The Clerk is directed to forward copies of this written opinion and order to the pro se plaintiff, all counsel of record, and the United States Magistrate Judge.

DATED: November 29, 2012

John T. Copenhaver, Jr.
United States District Judge